### MORTON v. A. H. ANDREWS CO.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915. Rehearing Denied January 3, 1916.)

#### No. 2218.

PATENTS &#x25C9;328—VALIDITY AND INFRINGEMENT—BUNK CAR.

The Morton patent, No. 582,217, for a bunk car, for moving lumber in and out of the drying room, was not anticipated and discloses invention, but is entitled to a narrow construction only, and a limited range of equivalents; also *held* infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by Horace J. Morton against the A. H. Andrews Company. Decree for defendant, and complainant appeals. Reversed.

On February 27, 1896, appellant filed his application for a bunk car used in connection with drying rooms, whereby lumber can be run into and out of a drying room. The object set out was to obtain a bunk car constructed of steel or other metal, which should be simple, strong, and easily assembled at the lumber drying kiln, one that could be easily moved in and out of the kiln, one which should operate with flanged wheels, presumably upon tracks—the car to be constructed lower than the bunk cars then in use, to enable the operator to pile thereon a higher pile of lumber ·than theretofore. For the side supports of his car, appellant uses channel irons arranged as right and left, combined with spreaders extending between the web of the two channel irons and holding them rigidly in place, rigid axles between and connecting the channels, surrounded by a hub inclosing roller bearings, about which rollers the flanged wheels revolve, and rotatable washers mounted on the axle against which the ends of the rollers abut.

Ten days prior to the filing of Morton's application, one Bemis filed his application for a lumber truck, likewise for use in connection with lumber drying kilns. These trucks also have for side support channel irons kept apart by

spreaders called in the application "washers." The Bemis specification says "The essential feature of the invention resides in the peculiar construction of the washer." These washers are hollow and cylindrical, so as to permit the passage of bolts therethrough. These bolts have threaded exterior ends extending through the channel web, "whereby," says the patentee, "the side strips of the truck frame may, by tightening the nuts upon the bolts, be sprung inward sufficiently to cause the nuts upon the bolts to be securely held or locked against possible accidental displacement."

On February 27, 1896, the examiner rejected claims 3 and 4 of Morton. On September 18, 1896, Morton amended these claims respectively by adding the words "such spreaders having peripheral edges against which the channel irons are respectively forced by a bolt extending centrally through the spreader." On April 9, 1896, an interference was declared between Morton and Bemis. This interference was redeclared, as amended, with one Hussey as an additional party, on July 30, 1896. The issue was: "A bunk car consisting of channel irons arranged as rights and lefts, in combination with spreaders extending between the channel irons and flanged wheels mounted between such channel irons, said spreaders having a peripheral edge extending beyond, or taking a bearing against the channel irons before the central portion, and means, such as a bolt passing through the central portion, of the spreader and the channel irons for forcing the web of the channel iron into the end of the spreader and thus springing such web." This, according to the examiner, was substantially Morton's original claims 1, 2, and 3, Bemis' claims 1 and 2, and Hussey's claims 1, 2, and 3. It was awarded to Bemis September 21, 1896. On August 1, 1896, an interference was had between Morton and Hussey upon the issue: "A bunk car consisting of channel irons arranged as right and left, spreaders extending between the channel irons and holding them rigidly in place, axles having shoulders on the ends thereof, extending between the channel irons and held rigidly in place, flanged wheels mounted upon the axles, rollers in the hubs of the wheels and around the axles and washers at the ends of the axle against which the rollers abut." This issue the examiner states is substantially that of Morton's claims 4 and 5 and Hussey's claims 4 and 5.

On September 16, 1896, Morton canceled his original claims 1, 2, and 3, which claims read as follows:

"1. A bunk car consisting of channel irons arranged as rights and lefts, combined with spreaders extending between the channel irons and flanged wheels rotatably mounted between such channel irons; such spreaders having, respectively, a circular edge, a hub extending beyond the circular edge and into but not through the web of the channel irons, and means for forcing such web over the hub and so springing such web, substantially as described.

"2. A bunk car consisting of channel irons arranged as right and left, combined with spreaders, having, respectively, a hub extending beyond the peripheral edge thereof, securing the channel irons together, such hub extending into but not through the web of the channel iron, a bolt having a head on one end and a nut on the other end and washers on the bolt, whereby the web of the channel is forced over the hub and sprung, and wheels rotatably mounted between the channel irons, substantially as described.

"3. A bunk car consisting of channel irons arranged as right and left, combined with spreaders extending beyond the channel irons and holding them respectively in place; and flanged wheels, rotatably mounted between such channel irons, substantially as described,"

—and renumbered claims 4 and 5 as claims 1 and 2, without change in his specification. On October 12, 1896, the August 1, 1896, issue was awarded to him. Amended claim 4, afterwards made claim 1 of the patent, reads as follows:

"A bunk car, consisting of channel irons arranged as right and left, combined with spreaders extending between the channel irons and holding them respectively in place such spreaders having peripheral edges against which the channel irons are respectively forced by a bolt extending centrally through the spreader, and flanged wheels rotatably mounted between the channel irons, such wheels consisting of a nonrotatable axle rigidly secured between

the channel irons, a flanged wheel, rollers in the hub of the wheel and around the axle, and washers rotatably mounted on the axle at the ends of the hubs, substantially as described."

Claim 2, originally claim 5, was unchanged, and reads as follows, viz.: "A bunk car consisting of channel irons arranged as right and left, spreaders extending between the channel irons and holding them rigidly in place, axles having shoulders on the ends thereof extending between the channel irons and held rigidly in place, a flanged wheel around the axle, rollers in the hub of the wheel and around such axle, and washers mounted on the axle against which the ends of the rollers abut, substantially as described."

Bemis' first claim calls for "the wheels having their axles journaled in openings formed in said side pieces," and his specification calls for "wheels which are grooved to fit the track upon which they are designed to run, are journaled in openings provided for the purpose in the side strips A and are preferably provided with roller or ball bearings." Morton has in his new claim 1 the Bemis spreaders. His flanged wheels turn about a nonrotatable, roller-bearing axle and washer at the end of the rollers. In order to bring his axle down as low as possible, and insure rigidity and nonrotatability thereof, Morton cuts shoulders thereon. By means of his rotatably mounted washer upon which the ends of the rollers abut, the latter are held in place, friction is reduced, and patentee is enabled to set his axle down low, thereby permitting the use of large wheels without protruding the periphery thereof above the platform of the car. The last above named features are not referred to in the claims. What the claims do provide, as against Bemis, are the combination of the roller mounted wheels, the locked axle, and the rotatable washers at the ends of the hubs or rollers, in combination.

In addition to Bemis, appellee relies on Arnold patent, No. 453,953, dated June 9, 1891, for a drier car, and Chatfield patent, No. 468,559, dated February 9, 1892, for a founder's truck. Arnold does not employ channel irons, and stands high from the track. The device of the Chatfield patent does not disclose the use of channel bars. Its arrangement is entirely different. It is not the combination of either appellant's or appellee's car. Other patents in the prior art are still more remote.

Appellee's truck, style No. 2, shows wheels not extending above the platform of the car. It also has the notched axis, the nonrotatable axle, the rollers, the rotatable washers abutting on the ends of the hub, or rollers, the channel side beams, and the hollow spreaders with bolts therethrough. Appellee claims a shop right or license to manufacture the device of the patent in suit.

It appears that Morton was employed by A. H. Andrews & Co. from 1884 to 1895. During the first five years of his connection with that company he was employed in making the "Noyes" lumber drier, and during the remaining period of his employment with A. H. Andrews & Co. he was engaged in making for them a lumber drier of his own invention. He had invented several lumber driers other than that of the patent and licensed A. H. Andrews & Co. to manufacture them; he receiving royalties, and also a salary for his services in connection with the manufacture of the driers. He invented the car in suit in the early part of 1894, and A. H. Andrews & Co. began to manufacture and sell it in that year, and continued so to do until some time in 1895, when they failed. It nowhere appears upon what terms Morton dealt with A. H. Andrews & Co. with reference to the car in suit. Thereafter the receiver, on or about February 10, 1896, by order of court transferred, with other property, "all of his right, title, and interest in and to the patents," etc., of A. H. Andrews & Co., to Heney & Merle Manufacturing Co. This latter company assigned the property and rights thus acquired to James B. Heney, who in turn, on or about May 21, 1896, sold the same to appellee, the A. H. Andrews Co. For about one year, from the time he severed his connection with A. H. Andrews & Co. until he entered the employ of appellee, Morton manufactured the bunk car of his patent under his own name. In 1896 he entered the employ of appellee, and continued in its employ until December 31, 1905, when it appears that the contract between the parties was abrogated. The record does not disclose what was done after 1905. During the first three or four of the nine years of Morton's employment with appellee he manu-

factured the device of his patent and sold it to appellee, and during the remaining period of approximately five years appellee itself manufactured the device under a profit sharing contract. There is no ground disclosed in the record justifying the claim of a license asserted by appellee.

The error assigned is the failure of the court to sustain the bill and to decree infringement. Other facts appear in the opinion.

Fred L. Chappell, of Kalamazoo, Mich., for appellant.

Dwight B. Cheever, of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). On March 26, 1896, Morton's claims 3 and 4 were rejected by the examiner. These claims were amended and placed in interference with Bemis and Hussey. The issue declared was the subject-matter of Morton's claims 1, 2, and 3, as defined by the examiner. These were awarded to Bemis. Morton thereupon acquiesced in the award, canceled claims 1, 2, and 3, and renumbered his two remaining claims as 1 and 2, being the claims now in issue. Bemis was granted the following claims in pursuance of said award:

"In a truck for use in lumber drying kilns, two parallel side pieces A, A, the wheels having their axles journaled in openings formed in said side pieces, the washers or separators B interposed at intervals of the length of the truck and serving to hold the side pieces at the required distance apart, the said washers B being hollow and having central openings for the passage of a securing bolt, the thickness of the washer at the point at which the bolt passes through it being less than at the periphery of the washer, substantially as described and for the purpose specified.

"A washer designed for separating the channel steel strip forming the frame of a lumber kiln truck, of the character described, the said washer consisting of a hollow body portion having apertured ends for the passage of a securing bolt, the ends being provided with a thickened portion surrounding the central bolt opening and the length of the washer at the point at which the bolt passes through it being less than at the outer face of the washer, substantially as described."

By reference to the claims in suit it will be seen that they embody the substance of Bemis' claim 1, with modifications of the grooved wheels and their adjustments. Bemis claims "the wheels having their axles journaled in openings formed in said side pieces" in combination, etc., confining his claims in the main to a lumber truck having specific arrangements of its spreaders, while Morton places particular stress upon the arrangement of the wheels in his truck. In a general way Bemis may be read upon Morton. Morton, however, claims to have been the first to invent and reduce to practice a bunk car of the kind in suit as a matter of fact. No reason is perceived for in any way limiting the terms of Bemis' claim 1. It covers a bunk car—wheels, spreaders, channel irons, and all that is necessary to make a complete bunk car, lacking only the special features of Morton's truck arrangement, to wit, nonrotatable axles, washers rotatably mounted on the axle at the ends of the hubs (that is abutting on the ends of the rollers contained in the hub), the lower axles with notch-formed shoulders, etc.

As before stated, Morton insists that it was not intended to concede to Bemis the channel irons, spreaders, etc., in combination with the

flanged wheel adjustments shown by Morton.   In support of this contention Morton asserts (1) that Bemis consented by his conduct to the award of the issue of the interference between him and Hussey of August 1, 1896, of which he had notice; (2) that he never canceled or was asked to cancel his original claims 4 and 5; (3) that he was in fact the first inventor of his truck notwithstanding the cancellation to Bemis; (4) that all Bemis can claim as against Morton is contained in Morton's claim 3 as amended; (5) that the matter was granted to him in the patent in suit; (6) that Bemis is not in the prior art as to invention.

It is true Morton's claims in suit were not canceled or even formally discredited in the interference.   That he is not entitled to claim a car constructed from channel irons, spreaders, and flanged wheels seems incontrovertible.   What he did get was a bunk car constructed substantially in the manner described in the claims in suit, which must depend for novelty upon the features wherein such claims differ from Bemis.

The use of channel irons, which are always available, constitutes a great element of convenience, and strength as well.   The art is a simple one, in which advances of a basic nature cannot be looked for. Every new idea tending to improve the usefulness of the device is entitled to serious consideration, and where, as here, efficiency is enhanced, in so simple a construction as a bunk car—a thing which has been in the broadest glare of man's simplest needs for a long period of time—no act of invention is too slight to be within the protection of the statute.   Therefore, taking these matters into consideration, together with the presumptions arising from the grant of the patent, we hold the patent to be valid, but entitled to but a narrow range of equivalents.

Appellee's device is shown as Complainant's Exhibit No. 5 and is termed "defendant's truck, style 2."   From the evidence it appears to be almost identical with the Morton bunk car in appearance.   It has the right and left channel beams related to each other, as shown in the patent.   The spreaders are double, instead of in a single piece. They serve the same purpose in substantially the same way; their outer rims bear against the inner faces of the beams as in the patent. The spreaders are provided with longitudinal central bolts, which clamp or pinch as in Morton; the rims, however, being skeletonized somewhat.   It has Morton's axle openings in the beams.   It has the notched axle ends for locking and lowering the axles.   The axles are rigidly clamped against endwise displacement or rotation.   There are anti-friction rollers, rotatable wheels, loose washers on the axles bearing against the ends of the hubs and of the rollers.   The adjustment of the wheels is practically the same.   Without invoking any material degree of the doctrine of equivalents, it appropriates the subject-matter of both of the claims in suit.

From the statement of facts herein, it is evident that appellee's claim to a shop right or license to manufacture the device of the claims of the patent in suit is without merit.   It obtained no such right under its purchase of the assets of A. H. Andrews & Co.   The

rights of Andrews & Co., if any, in the patent, were not superior to those of a naked license, and were therefore not assignable. Hapgood v. Hewitt, 119 U. S. 226, 234, 7 Sup. Ct. 193, 30 L. Ed. 369. Appellant was entitled to the relief above indicated, and the dismissal of the bill was error.

The decree of the District Court is reversed, with direction to proceed further in accordance herewith.

